[File No. 6408.]

A. J. GOETZ, Appellant, v. G. A. HUBBELL, Respondent.

(266 N. W. 836.)

Opinion filed April 25, 1936.

*Peter A. Winter,* for appellant.

George Thom, Jr., and Hyland & Foster for respondent.

BURR, J. The plaintiff owned and operated a general store in his own building in Lincoln Valley, and sold his stock of goods to the defendant in the fore part of May 1934. They discussed the use of the building and lots and agreed on a monthly rental of $40.00 for six months. At the same time the plaintiff offered to sell the building to the defendant for $2,000.00 in monthly payments of $50.00, defendant claiming the offer included the fixtures. Defendant asked for time for consideration, which was granted, no definite time being fixed. Nothing was said about interest or taxes, and no memorandum of agreement was made.

Defendant gave no formal notice of acceptance of the offer to sell, but on June 2, 1934 paid $50.00 in cash and prepared a receipt which was presented to the plaintiff and signed, as follows:

"Lincoln Valley, N. D.

6-2-34

"Received of G. A. Hubbell the sum of Fifty . . . . . . . . . . Dollars as payment on purchase of building & Fixtures of Lots 3-4-5 blk 2 at a price of $2000.

"A. J. Goetz."

The parties differ as to what took place immediately afterwards—plaintiff claiming he met the defendant and asked him what he meant by having Lot 3 and the word "fixtures" inserted in the receipt, and defendant responded, "I will come over later and see you." Plaintiff made no objection to the statement as to the purchase of the building and other lots.

On June 30, 1934 another payment of $50.00 was made and the receipt recited that the money was "To apply on the purchase contract for Building & Fixtures." Again, on July 30, a payment of $50.00 was made and this receipt recites that the money was received "to apply in payment on purchase contract for building and fixtures on lots 3-4-5 Blk 2 of Lincoln Valley at the price of $2000."

On September 1 and October 1 other payments of $50.00 each were tendered, with receipts of the same tenor. Plaintiff refused to accept payment until, as he says, "Mr. Hubbell comes over and lines up a promise." The offer to sell was not withdrawn before the three monthly payments of $50.00 were accepted, if withdrawn then. Thereafter the defendant deposited in a bank of good repute $50.00 per month, to the credit of the plaintiff, and subject to his check, until the sum of $450.00 had been deposited. Plaintiff paid the taxes, though defendant claims he attempted to do so and found them paid. During all this time the defendant was in possession of the building and operated his store therein.

After going into possession the defendant made improvements on the building, but those which are of a permanent nature are negligible in value.

The plaintiff commenced this action to determine adverse claims to the property involved. At no time did he offer to return the money received on the purchase price. nor to pay for any improvements made. Neither did he demand the payment of any rent, nor tender any writ-

ten contract of sale and purchase. Defendant claims these payments were a sufficient acceptance by him of the contract of sale and bind the plaintiff, if the contract be without the statute of frauds. The trial court gave judgment for the defendant, holding there was a valid contract for the purchase of the buildings and "that there is due upon said contract, from the defendant to the plaintiff, the sum of $2,-000.00 with interest from and after May 14, 1934, at the rate of 6%, amounting to the sum of $160.00 making a total of $2,160.00, less the sum of $600.00 paid thereon by the defendant, with interest at the rate of 6% per annum on the payments as made, from the date of making of the same, said interest amounting to $29.50 making a total to be applied on said purchase price of the sum of $629.50 and leaving due and unpaid thereon the sum of $1,530.50 as of the 14th day of September, 1935."

The plaintiff appeals demanding a trial de novo.

Appellant says there are three issues of law to be determined, viz., (1) Are the receipts filed by the plaintiff "sufficient under our law to constitute a valid memorandum under the facts and testimony in this case?" (2) If such receipts are not sufficient to remove the case from the Statute of Frauds, "then is there such part performance by virtue of taking possession *under the contract* as will justify specific performance?" (3) Have there been such valuable and permanent improvements made "so as to create an equitable estoppel?"

An agreement for the sale of real property is invalid "unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, . . ." Comp. Laws, § 5888. Ordinarily such memorandum would be an informal notation in writing of the salient features of the contract for purchase and sale and would state the provisions necessary to be included in the formal contract; but these need not be set forth in any set order. Neither is there any requirement that the memorandum itself shall be one document. "Any kind of document or documents, taken singly or together, may constitute the required memorandum, if the terms of the contract are sufficiently stated therein." If these documents "show who are the contracting parties, intelligently identify the subject matter involved, express the consideration, and disclose the terms and condi-

tions upon which the contract is entered into," then the memorandum is sufficient. The law on this subject is admirably set forth in 29 Am. & Eng. Enc. Law 2d ed. pp. 848 to 854. The memorandum need not characterize the parties, that is, describe them as vendor and vendee, nor need it necessarily use technical terms. While the statute is a limitation of judicial authority to afford a remedy, (Safe Deposit & T. Co. v. Diamond Coal & Coke Co. 234 Pa. 100, 83 A. 54, L.R.A. 1917A, 596) the purpose of the memorandum is not to make it the contract itself but to constitute sufficient written evidence of the parol contract.

In many jurisdictions the memorandum must be such as would bind both parties to the contract. Under our statute quoted the memorandum is sufficient if it be signed by the party to be charged with the contract and required to carry it out. Hence, the question of mutuality depends upon the statutory requirements necessary to constitute a memorandum rather than upon the general principles of mutuality as affecting contracts. In the case at bar the defendant sets forth in his answer a claim to the property under an oral contract with the plaintiff, claiming a sufficient memorandum signed by the party he seeks to charge with the contract, that is, by the plaintiff. It was not necessary for him to produce a memorandum signed by himself. Hence, decisions of courts under statutes or constructions requiring memorandum to be signed by both parties are not applicable here on this feature.

In the earlier cases the courts construed a memorandum with strictness. In Parkhurst v. Van Courtlandt, 1 Johns. Ch. 273, Chancellor Kent states: "A memorandum in writing, of the sale of lands, to be valid within the Statute of Frauds, must not only be signed by the party to be charged, but must contain the essential terms of the contract, expressed with such clearness and certainty that they may be understood from the writing itself, or some other paper to which it refers, without the necessity of resorting to parol proof." This rule appears to be based upon the theory that "Where an agreement is reduced to writing, all previous negotiations, resting in parol, are extinguished by the written contract, and cannot be resorted to, to help out or explain its meaning." It would, in fact, require the memorandum to be a complete contract. Later the Chancellor came

to the conclusion that this theory was erroneous and evidently decided the memorandum was not intended to be a complete contract in itself, but was rather proof of the contract. In Clason v. Bailey, 14 Johns. 484, he says: "I have thought, and have often intimated, that the weight of argument was in favor of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding, and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. It appears to be settled, (Hawkins v. Holmes, 1 P. Wms. 770, 24 Eng. Reprint, 606) that though the plaintiff has signed the agreement, he never can enforce it against the party who has not signed it. The remedy, therefore, in such case, is not mutual. But, notwithstanding this objection, it appears from the review of the cases, that the point is too well settled to be now questioned." The New York Statute of Frauds required a memorandum to be "signed by the party to be charged therewith." M'Comb v. Wright, 4 Johns. Ch. 659, 663.

If mutuality is not necessary, then it is clear the memorandum itself need not be a complete contract. As to what are some of the essential terms necessary to set forth in a memorandum, see White v. Breen, 106 Ala. 159, 19 So. 59, 32 L.R.A. 127; Cavanaugh v. Casselman, 88 Cal. 543, 26 P. 515; Kopp v. Reiter, 146 Ill. 437, 34 N. E. 942, 22 L.R.A. 273, 37 Am. St. Rep. 156; Olson v. Sharpless, 53 Minn. 91, 55 N. W. 125; McWilliams v. Lawless, 15 Neb. 131, 17 N. W. 349.

The memorandum claimed by the defendant to be sufficient consists of the three receipts signed by the plaintiff. They are "signed by the party to be charged"—that is, the vendor in this case, the plaintiff. Two of these receipts show the consideration as $2,000.00; and that the payments were received from G. A. Hubbell "on the purchase contract for building & fixtures on lots 3-4-5 Blk 2 of Lincoln Valley. . . ." If these receipts constitute a sufficient memorandum to permit us to inquire as to the oral contract, we find the plaintiff admits he offered to sell this property to G. A. Hubbell for $2,000.00 on monthly payments of $50.00 each. The receipts show monthly payments. It is true the receipts say it is for the purchase of the "building and fixtures" "of the lots." or "on the lots." The receipts do not

state that it is for the purchase of the lots. The oral contract shows that when the parties were discussing the purchase and sale they described it as the building, or the building and fixtures. Under the old rule, which required the memorandum to set forth all the essential features of a contract, as the court could not go beyond the writing, it might be a serious question whether the memorandum in this case is sufficient to show a sale of the lots; but under the modern rule, which looks upon the memorandum as the written evidence of the contract, the general rule with reference to the explanation of writings applies. The court will not receive oral evidence to describe the land to be sold. and then apply the description. Bayne v. Wiggins, 139 U. S. 210, 35 L. ed. 144, 146, 11 S. Ct. 521. Nor will a court vary the terms set forth so as to change what the memorandum shows to be a part of the contract. Atlee v. Bartholemew, 69 Wis. 43, 33 N. W. 110, 5 Am. St. Rep. 103. But in the case at bar the vagueness, if any, does not deal with the description of the land claimed, but rather the extent of the property sold. In such case external evidence, which does not contradict or add to the general conditions set forth in the memorandum, will be received for the description of the property. Ryan v. United States, 136 U. S. 68, 82, 34 L. ed. 447, 453, 10 S. Ct. 913; Kilday v. Schancupp, 91 Conn. 29, 98 A. 335, L.R.A.1917A, 151; Bogard v. Barhan, 52 Or. 121, 96 P. 673, 132 Am. St. Rep. 676. This is based upon the principle that that is certain which may be made certain. Preble v. Abrahams, 88 Cal. 245, 26 P. 99, 100, 22 Am. St. Rep. 301. Proof may be offered to show the "G. A. Hubbell" mentioned in the receipt is the vendee, as well as in explanation of other necessary features, such as terms of sale. This is not subject to the objection that it varies the terms of the written memorandum.

We believe the rule laid down in Bronson v. Chambers, 51 N. D. 737, 200 N. W. 906, to the effect that where "it is impossible to ascertain the intention of the parties thereto from the writing alone, the subsequent acts of the parties, showing the construction they put upon the agreement themselves, may be looked to by the court" is applicable here. Clearly the plaintiff understood and construed the contract to mean that it included the lots. In Baird v. Fuerst, 60 N. D. 592, 235 N. W. 594, we show that "A contract must be interpreted so as to give

effect to the mutual intention of the parties as it existed at the time of the contract so far as the same is ascertainable and lawful;" and approved the holding in Bronson v. Chambers cited.

Under our statutes real property includes "that which is affixed to land" (Comp. Laws, § 5249) and such are termed "fixtures." The plaintiff does not claim that the agreement excludes the land upon which the building and fixtures rested. His testimony shows that at one time he raised the question as to Lot 3, as to why it was included, but subsequently he signed receipts describing the property as including Lot 3, and we must assume that if there was a contract for sale, it covered the real property described in the receipt.

The purpose of the description is to make possible identification. When we consider the memorandum in this case, it is clear the plaintiff received from the defendant partial payments on the purchase price of the building, fixtures and Lots 3-4-5, etc., and that the contract price was $2,000.00. External evidence may be introduced to show that these payments, coming as they did in regular sequence, were intended as monthly payments, and, therefore, were in accordance with the agreement by the parties; and that the contract for the "building and fixtures" "of the lots" or "on the lots" described was intended to include the lots.

In Ullsperger v. Meyer, 217 Ill. 262, 264, 75 N. E. 482, 483, 2 L.R.A.(N.S.) 221, 3 Ann. Cas. 1032, the following memorandum of a contract for the sale of land, to-wit: "Chicago, Jan. 8, 1904. Received of Anton Ullsperger $100 on said purchase of the property No. 1031 Milwaukee ave. at the price of $14,000. C. Meyer" was held to be a sufficient memorandum under the Illinois Statute of Frauds, which says that "No action shall be brought to charge any person upon any contract for the sale of lands . . . or any interest in or concerning them . . . unless such contract, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith. . . ." This Illinois memorandum does not say what the property was nor how the remainder of the purchase price was to be paid. It does not show that the amount received was a monthly payment, nor is there any reference to interest on deferred

payments, taxes, insurance, etc. The court held that in construing such a receipt the court would take into consideration the necessary implications of law such as "that it (the contract) was to be performed within a reasonable time after entering into the same" and permitted proof of subsequent offers on the part of the vendee to perform. The court held such memorandum was sufficient because it was signed by the party sought to be charged and therefore the question of mutuality was not involved. By permitting external evidence as to the subsequent offers, it is clear the court looked upon the memorandum as proof of the contract rather than the contract itself. The memorandum was sufficient to identify an oral contract and supplied the necessary life which transformed an invalid contract into a valid contract. In the case at bar neither party questions the terms of the oral contract.. The three receipts are a sufficient memorandum to identify the parol contract whereby the plaintiff agreed to sell or offered to sell the property regarding which the parties were negotiating.

It is not necessary to discuss whether the defendant went into possession under a rental agreement merely. Clearly he had an option to purchase. He exercised that option by accepting the terms of payment. The plaintiff knew that the monthly payment of rent was $40.00 and that the purchase payments were $50.00 per month. He must be charged with knowing that when the defendant made three monthly payments at $50.00 per month these were payments on the purchase price of the property rather than for rental. His own actions show this. His objection was centered on the extent of the property sold rather than upon the nature of the possession. His acceptance of the monthly payments was an acknowledgment of the fact that the defendant had accepted the offer of sale. His refusal to accept further payments was not a repudiation of the agreement, but rather a demand to have a formal contract made. Hence, we need not discuss the other propositions of law said by the appellant to be involved herein.

The trial court found correctly that the memorandum was sufficient, and also that the plaintiff was entitled to interest on deferred payments.

The court required the defendant to deposit the remainder of the purchase price, which, of course, prevented the plaintiff from recovering interest on the deferred payments up to the end of forty months,

which would be the time required to make the payments at $50.00 per month.

We do not make a contract for the parties. We declare what the contract is. The plaintiff is not bound to accept the purchase price in any other manner or form than that described in the contract, that is, monthly payments at $50.00 per month. The contract was entered into in May 1934, and, therefore, the monthly payments would run for forty months therefrom. This would permit interest on deferred payments. Unless the plaintiff is willing to accept the cash payment in full as fixed by the trial court, he cannot be compelled to do so. However, if within thirty days from the filing of the remittitur the plaintiff accepts the deposit made, the judgment as entered by the District Court will be affirmed. Otherwise, the judgment will be modified to provide for monthly payments of $50.00 with interest on deferred payments at 6%, plaintiff to deposit proper deed as required, and as thus modified the judgment will be affirmed.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.