[File No. 6972]

**D. ESTHER BREY, Respondent, v. LARS TVEDT, JR., Appellant.**

(21 NW2d 49)

Opinion filed Nov. 16, 1945.   Rehearing denied January 5, 1946

*Paul Campbell,* for appellant.

*Ella Van Berkom,* for respondent.

MORRIS, J.   The plaintiff instituted this action to quiet title to the North West Quarter of Section 29, Township 153, Range 87 in Ward County, North Dakota, and to require the defendant to account for certain crops raised thereon.   The defendant answered, setting forth that he purchased the land at an auction sale held at the instance of the plaintiff and, by counterclaim, seeks a decree of specific performance requiring the plaintiff to convey title to him.

At the time of the trial the defendant, in open court, asked for judgment on the pleadings because the plaintiff had failed to reply to the defendant's counterclaim seeking specific performance.   The court took the matter under advisement and proceeded with the trial.   After the case was submitted the court, upon application of the plaintiff, reopened the case and

permitted her to file a reply wherein she denied the material allegations of the counterclaim and, as an affirmative defense to the counterclaim, pleaded the statute of frauds.

The trial court found that the plaintiff was the owner of the land and no valid contract was ever entered into between the plaintiff and defendant for the sale thereof. Judgment was entered quieting title in the plaintiff. The court also rendered judgment against the defendant for the value of one-fourth of the crops, which the parties had stipulated to be the value of the use and occupation of the land. The defendant appeals from the judgment and demands a trial de novo in the Supreme Court.

In March, 1944, the plaintiff caused to be published through newspapers and by means of hand bills, an advertisement of a public auction which stated:

"The following described pieces of Real Estate will be offered for sale at Public Auction to the highest bidder at front door of Ward county Courthouse on Saturday, April 1, 1944. Sale to Start at 2 p. m. Sharp."

Then followed the description of five quarter sections of land. Following the description, the advertisement stated:

"TERMS are $500.00 cash at the time of acceptance of bid, balance of the consideration to be paid upon delivery of deed and abstract showing merchantable title.

The right is reserved to reject any or all bids.

R. B. BREY, Owner
S. D. TEMANSON, Auctioneer."

R. B. Brey is the husband of the plaintiff and held title to some of the land described in the advertisement. The sale was held at the time and place advertised and S. D. Temanson acted as auctioneer. The plaintiff was present. The defendant bid $2550.00 on the land involved in this suit and the auctioneer announced that he was the purchaser, or words to that effect. Prior to the sale the auctioneer had arranged with Fred Brey, a brother-in-law of the plaintiff, to clerk the sale. He made a memorandum in which he wrote down the name of the de-

fendant, the description of the property and the amount of the bid.

Before calling for bids the auctioneer announced that the land involved in this suit, together with the North East quarter of Section 21 in the same township and range, was covered by a lien in favor of the Bank of North Dakota. The auctioneer also testified that he told the prospective bidders that any bid would have to be accepted by the plaintiff and would also have to be acceptable to the lien holder. The defendant remembers this announcement differently. He says that after announcing that the land was encumbered the auctioneer also said that if he didn't get a bid for both encumbered pieces together he would split them and that Mrs. Brey would clear them.

After the bidding was over Mrs. Brey, Fred Brey the Clerk, and the defendant went to a table in the rotunda of the courthouse where the plaintiff had the memorandum that had been made by the Clerk. The defendant made out a check for $500.00 on a Minot bank, payable to the plaintiff and handed it to her. At approximately the same time she made a notation on the memorandum "Csh." immediately following the description. She also made notations on the memorandum pertaining to some of the other land. She did not sign nor did she place her initials on the memorandum. When the defendant handed the plaintiff his check he told her to make the deed out to his son DuWayne. She then wrote "DuWayne Tvedt" on the memorandum and asked the defendant if it was a cash deal. When he replied in the affirmative she said, "All right, as soon as I have the abstract and deed ready I'll let you know. It may take some little time to get that."

After the sale the defendant left the scene of the bidding. The next that he heard of the transaction was upon the receipt of the following letter, dated April 4, 1944, which said:

"We find it necessary to reject your offer on the NW¼ 29–153–87 and we are herewith returning your check issued in the amount of $500. The above land has been connected and under the same contract with the NE¼ 21– and we do not deem it ad-

visable to dispose of the one without the other as the Bank of North Dakota will not release one only. However, if you should be interested in purchasing the NE¼ 21 too we could go thru with the deal and we would be willing to accept $8.00 an acre. This quarter is all fenced and has a spring, which would be ideal for grazing, altho there has been 35 acres under cultivation which acreage has been under the restoration program the last few years. This restoration is off now so it could be put back in cultivation if desired.

Check enclosed herewith."

The plaintiff testified that she wrote this letter and sent it in her husband's name. It was received by the defendant on April 8th. At the time the check was issued and at all times during the plaintiff's possession thereof the defendant had more than the amount of the check on deposit in the bank upon which the check was drawn. On April 10th the defendant caused to be served upon the plaintiff a notice of deposit tendering to the plaintiff the sum of $2550.00 and depositing that amount in the American State Bank of Minot, North Dakota, to be paid to the plaintiff upon delivery of a sufficient deed to the premises involved. This money still remains on deposit pursuant to the notice.

At the time he received the letter returning his check the defendant had not started farming the land although he had made arrangements to procure seed for it. After receiving the letter and without the consent of the plaintiff the defendant proceeded to farm the land and to claim the right to the possession thereof.

The defendant asserts that the court erred in reopening the case after it had been submitted and permitting the plaintiff to file a reply in which she specifically pleaded the statute of frauds as well as a general denial. No new evidence was adduced and the court proceeded to the determination of the case after the reply had been filed.

Section 7482, Comp Laws ND 1913 (§ 28-0737, Rev Code 1943) empowers the court to permit certain amendments to

pleadings in furtherance of justice before or after judgment. Section 7483, Comp Laws ND 1913 (see § 28–0739, Rev Code 1943) provides that:

"The court may likewise, in its discretion and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this code, or by an order enlarge such time."

The court clearly had the power to permit the plaintiff to reply to the counterclaim and no abuse of the exercise of that power is here shown. The defendant's claim to error on this point is without foundation.

It may be noted that this court has held in Fried v. Lonski, 48 ND 1023, 188 NW 582, that the statute of frauds pertaining to the sale of real estate is available as a defense under a general denial. This logically follows from the fact that the statute renders void contracts that fail to comply therewith, a point which we discuss later in this opinion.

The trial court determined that the contract under which the defendant claims he purchased the property in question and which he seeks to enforce by specific performance is an oral contract, that no written memorandum thereof was subscribed by the party to be charged and that there was no part performance sufficient to take the contract out of the operation of the statute of frauds. This determination is vigorously challenged by the defendant.

We have two statutes bearing upon the controversy, the pertinent parts of which are as follows:

Section 5888, Comp Laws ND 1913 (§ 9–0604, ¶ 4, Rev Code 1943):

"The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent: . . . 5. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged."

Section 5963, Comp Laws ND 1913 (see § 47–1001, Rev Code 1943):

"No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

The defendant argues that these statutes do not apply to auction sales and that the contract becomes complete when the bid is accepted. He cites Lyche v. Steele County, 72 ND 238, 6 NW2d 92. That case states the general rule with reference to auction sales. It involved a sale of land obtained by the county for taxes and the application of the statute of frauds was not an issue. The sale was statutory, the bid of the purchaser was in writing and was formally accepted by the Board of County Commissioners. We held that the sale was complete when the bid was accepted. 5 Am Jur 465, Auctions, § 28, says that, "Present-day authorities universally agree that sales by auction, unless expressly exempted, are within the provisions of the statute of frauds." See also Browne on the Statute of Frauds, 5th ed, § 264. This rule is supported by a multitude of authorities and is consistent with our statutes relating to the sale of private property at public auction. Rev Code 1943, §§ 3–0501 and 3–0502. Our statutes of fraud apply to sales of privately owned real estate at public auction with the express modification contained in § 3–0502, Rev Code 1943, which vests in the auctioneer the authority to make the required memorandum on behalf of both the bidder and the vendor in the form and content prescribed by those statutes. See Giolitto v. Dingolo, 251 Mass 38, 146 NE 226.

The modern use of the term "statute of frauds" is descriptive of statutes which fall into two general classes. The first class, which has no application to the facts in this case, follows in substance the old English statute of frauds. These statutes are generally held to bear upon the remedy and to render con-

tracts that do not comply therewith unenforcible. We have such a statute pertaining to the sale of goods or choses in action of the value of $500 or upwards. Sections 9–0605 and 51–0105, Rev Code 1943, Abraham v. Durward, 46 ND 611, 180 NW 783. The second class of statutes includes those involved in this case. They declare contracts enumerated therein to be invalid. Some courts have held that the term "invalid" when considered in the light of the context and the history of the statutes means merely voidable or unenforcible and apply the same rules in determining the effect as are generally applied by decisions under statutes which by their terms make the contracts unenforcible. Williston, Contracts, Rev ed, § 531; O'Brien v. O'Brien, 197 Cal 577, 241 P 861; Levi v. Murrell (CCA 9th) 63 F2d 670. Other courts give a more literal construction to the word "invalid" and hold that contracts which fail to comply with the statute are wholly void. Reedy v. Ebsen, 60 SD 1, 242 NW 592. This court is committed to the literal construction. Fischer v. Dolwig, 39 ND 161, 166 NW 793; Weber v. Bader, 42 ND 142, 172 NW 72; Baird v. Elliott, 63 ND 738, 249 NW 894, 91 ALR 1274; Fried v. Lonski, 48 ND 1023, 188 NW 582, supra. In syllabus one of the latter case it is said that the statute "affects the validity of a contract, falling within the statute, and renders such contract wholly invalid; and specific performance thereof may not be compelled unless there has been sufficient part performance to take the contract out of the provisions of the statute."

In the case before us the offer by the auctioneer and the purported acceptance by the bidder were oral. Our statutes of fraud apply. The contract of sale was void unless a sufficient memorandum was made to comply with the statute. The auctioneer had authority to make a memorandum and thus bind both parties. Rev Code 1943, § 3–0502. In Am Law Inst Restatement, Contracts, Vol 1, § 212, it is said:

"In a sale and in a contract to sell at auction the auctioneer or his clerk, if not interested in the subject matter of the sale otherwise than in his functions as auctioneer or auctioneer's clerk, is authorized to make and sign a memorandum on behalf of both the buyer and the seller, immediately after the sale."

The vendor and the bidder were both present at and for a time after the auction. They, being the principal parties, could have entered into a sufficient memorandum between themselves. A partial memorandum was made by the auctioneer's clerk to which some details were added by the vendor. However, she did not subscribe to it nor was her name subscribed by the auctioneer or clerk. Moreover neither the auctioneer nor the clerk signed it. The only name of any of the parties to the transaction that appears on the memorandum is that of the defendant. Though we consider the memorandum sufficient in other respects it wholly fails to satisfy the requirements of the statutes in that it was not subscribed by the party to be charged or her agent. The contract was void despite the memorandum unless there was a sufficient part performance on the part of the bidder to satisfy the statute or a further memorandum signed by the party to be charged which when taken with the first would be sufficient.

It is contended that the plaintiff's letter which was written in her husband's name and with which she returned the defendant's check, in effect completes the memorandum and satisfies the statute. The letter does not refer to the former memorandum but refers to the transaction as an offer. It does not recognize either specifically or by implication the completion of a sale. It does not mention the terms of sale. When we consider the fact that our statute rendered the original oral contract void and a sufficient memorandum was not made at the time of the auction, it cannot be said that the plaintiff's letter is sufficient to import validity to that which was void ab initio.

The defendant further urges there has been such part performance on his part as to save the contract from the operation of the statute of frauds. He urges two points in connection with his claim of part performance, possession and part payment. The land has no improvements thereon but is cultivated during the farming season. The auction was held on April 1st. On that date he gave the plaintiff his check for $500.00 which was returned to him in a letter dated April 4th. He did not go upon the land or perform any acts with reference to the crop-

ping or cultivating of it until after he received the letter. Some time later he took possession and farmed it. That possession was taken without the knowledge or consent of the plaintiff. Delivery of possession may under certain circumstances constitute part performance, but in order to be so considered it must have been taken with the consent or at least with the acquiescence of the vendor. 49 Am Jur 744, Statute of Frauds, § 439. See notes in 101 ALR 1045; Ann Cas 1913E 510. It is clear that the possession obtained by the defendant does not satisfy the statute.

The defendant's claim that the acceptance of his check for $500.00 by the plaintiff saves the transaction is untenable. The situation here is the same as that which existed in Fried v. Lonski, supra. In that case the part performance claimed was a payment of part of the purchase price by check. We said:

"The overwhelming weight of authority is to the effect that part payment of the purchase price is not in itself sufficient part performance to take a contract out of the statute of frauds and warrant the court in compelling specific performance thereof."

This is in accord with the general rule. 49 Am Jur 766, Statute of Frauds, § 459. There is neither such possession nor payment on the part of the defendant as to satisfy our statutes.

Affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.