Fritz **HARTMAN** and Loren **Hartman**,
Plaintiffs,

v.

**E. A. McNAMARA, Defendant.**
**Civ. No. 185.**

United States District Court
D. North Dakota,
Southwestern Division.
Aug. 18, 1960.

Ward M. Kirby and Theodore Kellogg, of Mackoff, Kellogg, Muggli & Kirby, Dickinson, N. D., for plaintiffs.

Milton K. Higgins, of Higgins & Murphy, Bismarck, N. D., for defendant.

REGISTER, Chief Judge.

This action was tried to the Court without a jury in Bismarck, North Dakota, on July 16, 1960. Following the trial, both parties have submitted briefs. The Court has carefully considered the testimony and evidence submitted at the trial, all the stipulated facts, arguments of counsel, and said briefs.

Plaintiffs have submitted no evidence bearing on the question of alleged damages, it being agreed between both parties that a determination of such issue be deferred until after the question as to the existence of a legal and binding contract has been decided.

Many of the facts pertinent to a determination of the issue posed herein are before the Court by virtue of written stipulations. Additional facts have been established by the testimony and exhibits submitted during trial. Only those facts necessary for the purpose of this memorandum and decision will be discussed.

Defendant and his wife became the owners of the ranch property involved by purchase from one Florian D. Armbrust on or about June 21, 1955. Sometime prior to September 21, 1958, Mr. Armbrust, upon being advised by defendant that he wished to sell the property, contacted the plaintiffs and accompanied them to the ranch, where they (plaintiffs, together with Mr. Armbrust) viewed the premises. On September 21, 1958, at Ismay, Montana, a meeting was had between defendant and plaintiffs. At that time a proposed sale was discussed and plaintiff Fritz Hartman drew and delivered a check signed by him, payable to defendant, in the sum of $1,000. This check was at that time accepted by defendant and, after affixing the endorsement "E. A. McNamara Deposit only", deposited by him. This instrument is in evidence as Plaintiffs' Exhibit 1. Plaintiffs contend that at the time of

such discussion they and the defendant agreed orally to all terms of the sale, as set forth in the instrument designated Plaintiffs' Exhibit 3. Defendant contends otherwise, saying that at such time there was no agreement as to amount of downpayment, amount of annual payments, rate of interest and other essentials, including the specific personal property involved.

At that time, defendant wrote a letter (Plaintiffs' Exhibit 2) addressed to Mr. Melvin Griffin (tenant on the ranch), and gave it to plaintiffs to deliver to Mr. Griffin—the pertinent portion of this letter is: "I have sole (sic) the ranch to Mr. Hartman. Will you please show Mr. Hartman the machinery, horses, and the tools thet (sic) go with the ranch, also the furniture * * * ".

Thereafter, on September 26, 1958, and pursuant to agreement of the parties involved, they met in the law offices of Mr. W. F. Reichert in Dickinson, North Dakota. At that time and while Mr. Reichert was securing necessary information for the purpose of preparing a Contract for Deed, defendant displayed to Mr. Reichert a lease of the premises involved, in which Melvin Griffin and his wife were therein named lessees and which contained a provision giving the lessees "first chance to buy under the terms of such sale, during the full one year term of this lease". The lease was due to expire one year after the 1st day of November, 1957. Mr. Reichert thereupon advised defendant, in the presence of plaintiffs, that it would be necessary to secure a waiver or release of such option from the named lessees. The parties hereto then left said law office in an attempt to secure a release from the Griffins. Mr. Griffin was found in Dickinson and all parties concerned returned to the Reichert office. During conference at that time, Mr. Griffin stated that he was interested in purchasing the property and asked for sufficient time to enable him to raise the required money. Before the parties hereto and Mr. Griffin departed the law office that afternoon, defendant

McNamara issued his check for $1,000 to Mr. Fritz Hartman in repayment of the latter's check and laid it on the desk in the payee's presence. The check was not accepted by plaintiff Hartman.

On September 27, 1958, the day following the conference in Mr. Reichert's law office, defendant sent a letter to said Fritz Hartman, the body of which letter is as follows: "Please find inclosed (sic) my check in the amount of $1000.00 one thousand dollars, this is to repay you for thee (sic) check you gave me." Said letter was sent by certified mail but was returned unclaimed, and had been refused by the addressee. (Defendant's Exhibits F, G and H.)

On October 8, 1958, the parties hereto again met in the Reichert law office and, at the request of defendant, plaintiffs' Exhibit 3 was prepared at that time by Mr. Reichert. This instrument is in the form of a letter addressed to defendant and his wife, is signed "Loren Hartman", and is witnessed. The body of the letter commences with the words: "My offer to purchase the following described lands, in Billings County, North Dakota, to-wit: * * * was and is as follows: * * * ". Thereafter appear in detail specific terms and conditions of sale. Following the signatures of Loren Hartman and the witnesses aforesaid appears the following statement: "I do hereby certify that the foregoing represents the terms of the offer made to me by Milton Hartman, in connection with the sale and purchase of the above described lands and premises." Said statement is subscribed to by E. A. McNamara, defendant, whose signature is witnessed.

Up to the time Exhibit 3 was prepared (October 8), Mr. Griffin had given no firm indication as to whether he would buy the property; according to the testimony of defendant, Exhibit 3 was prepared for the purpose of eliciting a prompt decision from the Griffins. Defendant contends that the specific terms and conditions contained in Exhibit 3 were not agreed upon at the time of the oral agreement in Ismay, Montana, on

September 21, 1958; plaintiffs' position is to the contrary.

Subsequently, the Griffins did purchase the property. As a result of the sale to Mr. and Mrs. Griffin, this action was commenced by plaintiffs for damages for an alleged breach of contract.

As stated, the parties have agreed, with the approval of the Court, that the sole question now presented for determination is the existence or non-existence of a valid and binding contract—deferring the question of damages, if any (and provided there was a valid contract in existence, and a subsequent breach thereof, as alleged) to some later date.

 The specific issue of law to be determined is whether or not there are sufficient memoranda in writing to satisfy the North Dakota Statute of Frauds relative to a sale of land by contract. (The question has been raised by plaintiffs relative to the sufficiency of pleading the statute of frauds, by way of defense. It is the opinion of this Court that said defense has been sufficiently pleaded. See: Fried v. Lonski, 48 N.D. 1023, 188 N.W. 582 and Brey v. Tvedt, 74 N.D. 192, 21 N.W.2d 49.)

The North Dakota statutes here involved are Sections 9–0604 and 47–1001, NDRC 1943. The applicable parts thereof are as follows:

"9–0604. Contracts Invalid Unless in Writing: Statute of Frauds. The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

\* \* \* \* \* \*

"4. An agreement \* \* \* for the sale, of real property, or of an interest therein."

"47–1001. Method of Transfer. An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by his agent thereunto authorized by writing. \* \* \*"

The only writings or memoranda that can possibly be construed to be material here are the check from Fritz Hartman to defendant in the sum of $1,000 (Exhibit 1), the letter from defendant to Mr. Griffin (Exhibit 2), and the instrument designated Exhibit 3.

 The North Dakota Supreme Court in the case of Goetz v. Hubbell, 66 N.D. 491, 266 N.W. 836, clearly and succinctly states what is necessary to comply with the Statute of Frauds. The Court therein prescribes the tests to be applied in determining whether or not said statute has been complied with.

" 'Any kind of document or documents, taken singly or together, may constitute the required memorandum, if the terms of the contract are sufficiently stated therein.' If these documents 'show who are the contracting parties, intelligently identify the subject matter involved, express the consideration, and disclose the terms and conditions upon which the contract is entered into,' then the memorandum is sufficient." Goetz v. Hubbell, supra, 266 N.W. at page 838.

The Court therein adopts the so-called "modern rule", which looks upon the memorandum as the written evidence of the contract. This adoption is later approved by said Court in Hoth v. Kahler, N.D., 74 N.W.2d 440.

It is apparent that neither the check (Exhibit 1) nor the letter (Exhibit 2), singly or together, satisfied such requirements.

The issue is narrowed, then, to what legal effect, if any, should be given to Exhibit 3. Plaintiffs contend that it should be treated and considered as such memorandum and that, though it was prepared and subscribed to some time after the oral agreement, the requirements of the statute of frauds are thereby satisfied. They cite authorities to the effect that the written memorandum need

not be made contemporaneously with the oral agreement, but may be made subsequent thereto. 37 C.J.S. Frauds, Statute of § 171, p. 647 et seq.; Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014, and Townsend v. Kennedy, 6 S.D. 47, 60 N.W. 164. In said section 171, 37 C.J.S., at page 648, there appears the following: "It is held that the memorandum may be made *at any period of the performance of the contract,* * * *"*. (Emphasis added.) The Missouri Court, in the Kludt case, supra, had before it the Missouri Statute of Frauds (Sec. 3355, R.S.Mo.1939), which provided [350 Mo. 793, 168 S.W.2d 1070]: "No contract for the sale of goods, * * * for the price of thirty dollars or upward, shall be allowed to be good, * * * unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged * * *." In its opinion that Court held: "Respondents orally agreed to the terms. This agreement was not illegal or void. The phrase in the statute 'allowed to be good' only refers to the remedy and does not make the contract void." While the South Dakota Court in Townsend, supra [6 S.D. 47, 60 N.W. 166], does make the assertion that "The note or memorandum may be made subsequently to the agreement.", it is not helpful to the situation presented here.

It is interesting to note the following, found in Restatement of the Law, Contracts, Section 214: "A signed memorandum that correctly states the terms of a contract satisfies the Statute, whether the memorandum is made before or at the time of the formation of the contract, or at any subsequent time *during its existence.*" (Emphasis added.)

In Louisville Trust Co. v. National Bank of Kentucky et al., 6 Cir., 102 F.2d 137, 140, involving the Kentucky Statute of Frauds, the Court said: "There is no necessity that the making of the note or written memorandum should be contemporaneous with the making of the parol agreement, but if it is not contemporaneous there must be evidence of a continuance of the defendant's acquiescence in it and some act upon his part evidencing continued assent." The Court therein refers with approval to the case of National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97.

The North Dakota Supreme Court, in Brey v. Tvedt, supra, makes the following comments [74 N.D. 192, 21 N.W.2d 52]: "The modern use of the term 'statute of frauds' is descriptive of statutes which fall into two general classes. The first class, which has no application to the facts in this case, follows in substance the old English statute of frauds. These statutes are generally held to bear upon the remedy and to render contracts that do not comply therewith unenforcible. * * * Other courts give a more literal construction to the word 'invalid' and hold that contracts which fail to comply with the statute are wholly void. * * * This court is committed to the literal construction." This same court, in the later case of Syrup v. Pitcher, 73 N.W.2d 140, 144, held: "Under the provisions of Section 9–0604, supra, certain oral contracts are declared to be invalid. This means that they are wholly void. * * *".

Plaintiffs call the attention of this Court, however, to the language of the North Dakota Supreme Court in Goetz v. Hubbell, supra, as follows [66 N.D. 491, 266 N.W. 838]: "While the statute is a limitation of judicial authority to afford a remedy, * * * the purpose of the memorandum is not to make it the contract itself, but to constitute sufficient written evidence of the parol contract." The following quotations are likewise cited: Syllabus by the Court, Syrup v. Pitcher, supra: "An oral contract for the sale of real estate *where there has been no compliance* with the provisions of Section 9–0604, NDRC, 1943 (statute of frauds) is void." (Emphasis added); syllabus by the Court, Brey v. Tvedt, supra: "An oral contract for the sale of real estate, *where there is no compliance* with the statute of fraud, is void." (Emphasis added); and syllabus by the Court, to similar effect, in Baird v. Elliott, 63 N.D. 738, 249 N.W. 894, 91 A.L.R. 1274.

The attention of the Court has also been directed to 37 C.J.S. Frauds, Statute of § 244, p. 746, a part of which is quoted as follows:

"As shown supra § 171, the memorandum required by the statute of frauds may be made subsequently to the making of the contract itself. The subsequent writing renders the original oral agreement enforceable so that the invalidity of the oral contract is no longer available as a defense. In such a case it is the oral contract that is enforced, and not the memorandum by which such contract is proved. A subsequent act which is relied on as satisfying the statutory requirements does not constitute a new contract in the absence of evidence that the party intended thereby to repudiate the oral contract; it merely supplies the particular kind of evidence necessary to establish and give effect to the contract *already in existence*." (Emphasis added.)

In each of the North Dakota cases cited, it is apparent that the alleged oral agreement there involved was still in existence at the time of the making of the memorandum thereof. The general statement appearing in C.J.S., above quoted, expressly refers to the contract "already in existence".

At the time of the September 26th meeting in Mr. Reichert's law office in Dickinson, plaintiffs were present when Mr. Reichert advised the defendant as to the rights of the ranch tenants, Mr. and Mrs. Griffin, under the then existing lease. At that time in the negotiations plaintiffs knew that the defendant had been advised he could not legally sell them the property unless and until the necessary waivers or releases were secured from said lessees. At that time, the defendant tendered and attempted to deliver to plaintiffs a check in the sum of $1,000 as repayment of the $1,000 theretofore received by him. As such check was not accepted by plaintiffs, on the following day the defendant sent a check for $1,000 to the plaintiffs by certified mail, addressed to the plaintiff Fritz Hartman, who again refused to accept it. After receiving the advice from Mr. Reichert concerning the rights of the Griffins, plaintiffs accompanied the defendant in the latter's search for Mr. Griffin and returned to the Reichert office with the defendant and Mr. Griffin, and there became fully informed as to Mr. Griffin's position before the attempted delivery of the $1,000 check by defendant. In the Court's opinion, the facts clearly establish that the oral agreement was, on the 26th day of September, 1958, abrogated. By the issuance and attempted delivery of the check for $1,000, defendant clearly and unequivocally expressed his intent to then repudiate such oral agreement. Mutuality of consent had ceased; no oral agreement thereafter existed. By their refusal to accept said $1,000 check and by their subsequent actions, plaintiffs in effect acknowledged such to be their understanding. During defendant's negotiations with the Griffins, which occurred thereafter, both parties treated such oral agreement as having been abrogated. In view of what the Supreme Court of this state has held, therefore, the prior oral agreement was void, there being no compliance with the statute of frauds. Brey v. Tvedt, supra, and Syrup v. Pitcher, supra.

Exhibit 3 was thereafter, on October 6, 1958, prepared. This instrument purports to be a then existing and present offer on the part of plaintiffs to purchase the property here involved for a specific sum and on specific terms. As such, it is not material to the issue here involved, as the offer was never accepted. In addition, it purports to state that it contains the terms of a previous offer; the certificate signed by the defendant in effect certifies that its contents were accurate and correct.

Defendant by his testimony denied that the previous oral agreement was specific in terms and conditions as stated in Exhibit 3, and testified as to the reason for the preparation of said exhibit, as heretofore stated. The Court is inclined to believe and accept defendant's testimony

298

on this point, the same being reasonable and likely under the circumstances. Such testimony is, in effect, substantiated by Mr. Reichert, who states in his affidavit on file herein (with reference to the first meeting in his office): *"The Hartmans commenced to give me the terms as to what they thought the contract should be and I was taking notes on same, when Mr. McNamara handed me a Lease on a printed form, and asked what effect I thought an inserted purchase option would have on the transaction."* (Emphasis added.) However, as the memorandum required by the statute of frauds need not be a completed contract, but only sufficient written evidence thereof (Goetz v. Hubbell, supra), this Court does not regard such conflict as of material significance.

In any event, it appears that the oral agreement in this case was void ab initio because no sufficient written memorandum was made to comply with the statute. Exhibit 3 was prepared and signed after the oral agreement had been abrogated and no longer existed. At such time it was not the intent or understanding of either party that it was a memorandum of a then existing oral agreement. The evidence conclusively establishes the fact that, at such time and for a substantial time prior thereto, defendant's acquiescence in the oral agreement had terminated. In principle, the reasoning of the Supreme Court of Wisconsin in Koch v. Williams, 82 Wis. 186, 52 N.W. 257, 258, is applicable and persuasive. Exhibit 3 was and is not such a memorandum as will satisfy the statute of frauds.

Plaintiffs having failed to sustain their burden of proving a valid contract for the sale of the property involved herein by a fair preponderance of the evidence, the defendant is entitled to a judgment of dismissal, with costs.

It is so ordered.

Counsel for defendant will forthwith prepare and submit appropriate form of Judgment in conformity with the foregoing.