[File No. 5959.]

ELLEN STONE, Appellant, v. EVAN CLIFFORD STONE, by E. C. Stone, His Guardian ad Litem, A. L. Lombard, and All Other Parties Unknown Claiming any Estate or Interest in or Liens or Encumbrances upon the Property Described in the Complaint, Respondent.

(238 N. W. 881.)

Opinion filed November 14, 1931.

*Nestos, Herigstad & Stenersen,* for appellant.

*F. J. Funke,* for respondent, *E. C. Stone,* guardian ad litem, for Evan Clifford Stone.

BURR, J. This is an action brought to quiet title in the plaintiff to certain land. The defendant Evan Clifford Stone, by E. C. Stone, his guardian ad litem, commenced an action to quiet title in him. The complaint in this latter case was adopted as an answer in the former case, the two actions being consolidated and tried as one. The land involved is known as the Odegaard or Luschenk's land.

Evan Clifford Stone is the son of E. C. Stone and Ellen Stone, the former wife of E. C. Stone, and was eighteen years old at the time of trial.

The defendant admits that "on or about the 7th day of March, 1928, . . . Ellen Stone was the owner of record" of the land involved; but alleges "that the said real estate . . . was acquired by E. C. Stone . . . but that as a matter of convenience, the title thereto was taken in the name of Ellen Stone who is the mother" of the defendant. He alleges that his father brought an action against the mother, the plaintiff herein, for divorce and "that a property settlement was made and entered into between the said E. C. Stone" and the plaintiff, that "said property settlement so made was afterwards incorporated and made a part of the decree of divorce which was in said action granted to the said E. C. Stone."

He further alleges that "as a part of the property settlement it was agreed by and between the said E. C. Stone" and Ellen Stone that the premises described should be transferred to him and that thereafter his parents made and executed a warranty deed conveying the premises to him, that this deed was delivered to the father, for and on his behalf "but that said warranty deed was lost or mislaid and that notwithstanding a diligent search . . . the said deed so made and executed as aforesaid has not been found."

The case was heard in June 1930. In September 1930 the plaintiff moved the court for leave to introduce further testimony, the motion being based upon the affidavit of the plaintiff and the affidavit of one of her counsel. Later, other counsel for the plaintiff asked permission to introduce further testimony. The motion was denied and on November 14, 1930, the court made findings of fact and order for judgment in favor of the defendant herein.

The plaintiff thereupon moved the court for a new trial specifying as grounds newly discovered evidence, insufficiency of the evidence to justify the decision of the court and surprise, basing the same on numerous affidavits, which with the counter affidavits are referred to in the order. The trial court denied the motion and from the judgment entered and from the order denying the motion for a new trial the plaintiff appeals, demanding a trial de novo.

The defendant bases his right to the land upon an alleged agreement in the property settlement to deed the land to him.

It is undisputed the plaintiff was the owner of the land involved at the time of the divorce proceedings referred to. The writing known as the property settlement is in evidence. Nowhere therein is there any reference whatever to the land involved, nor any provision that this land should be deeded to him by the plaintiff or anyone else. Neither is there any agreement on the part of Ellen Stone to use any of her property to support the children of the marriage, though there is a provision therein relative to the custody of the children and an agreement on the part of E. C. Stone to pay to Ellen Stone $12,000.00 in cash and certain sums per month for the maintenance of the children. There is no agreement on the part of Ellen Stone to convey any property to any of the children; but she does agree to relinquish all claim for alimony and all "rights in any real or personal property" owned by E. C. Stone.

Both Dr. Stone and his former wife, the plaintiff testified in the case. Neither of them was asked whether such agreement was a part of the property settlement but had been inadvertently omitted from the writing; and neither of them testified that it was. It makes provision for the custody and support of the defendant and the other children, their education and residence, and the father's liability in case of possible illness. The lawyer who drew the writing says he had several conversations with both husband and wife with reference to the settlement and "in none of these conversations was there ever any mention made of the fact that she was to deed the land to anyone. This land was never talked of as being re-deeded to any one or never discussed." There is no claim made by any one that the property settlement was partly in writing and partly oral. It seemed to be conceded that the writing known as the property settlement called Exhibit 2, was the full and complete agreement between the parties to the divorce proceedings as to property rights and the control of the children. Hence it is clear that there is absolutely no proof showing any agreement between Dr. Stone and his wife, at the time of the divorce proceedings, that the plaintiff was to deed this land to the son.

Another significant matter with reference to this is that the property settlement is dated November 20, 1927 and E. C. Stone the hus-

band says the divorce was granted in December 1927. (The affidavits used on the motion for a new trial shows he was in error as to this.) The husband of the plaintiff, being the father and guardian ad litem of the defendant, testifies that this alleged deed was executed the first part of March 1928, that he ordered his office girl to draw a deed to the land and have the plaintiff sign it; that the office girl came back with a deed signed "Mrs. E. C. Stone" and he objected to the form of signing and had the office girl draw another deed and he and the office girl went to the plaintiff and asked her to sign as "Mrs. Ellen Stone;" that the plaintiff signed the deed and gave it to him. The office girl corroborates his testimony as to drawing a deed and going with him to have it signed. To substantiate her testimony shorthand notes which she took, showing the date to be "Mar. 8–28," were offered and received without objection. An examination of these notes in connection with other date lines in the same note book covering a period of many months, renders them open to grave suspicion. Other matters were dictated and taken by her that day including this notation which she translates as follows: "Mar.–8–28 Draw deed from Ellen Stone to Evan Stone for three quarters in section 5–151–78." Her exclusive practice in all cases but the latter is to place the date on a line separate by itself as the heading of a letter or notation; but in the case of this alleged direction to draw this deed the date "Mar. 8–28" is sandwiched in the fourth line from the bottom of the second column on the note book at the end of some stenographic characters; and this appears to be the only instance of the kind. When we consider how important the date of the deed is, the property it involved and the manner of securing it this alleged substantiation is of little value to us. In addition it is hearsay and self serving.

The office girl testifies she witnessed the signature; but there was no notary public present and therefore the deed was not acknowledged. No one testifies that any attempt was made to have the deed acknowledged or made ready for record. E. C. Stone claims he took the deed back and left it in his desk and it became mislaid and lost.

The only other testimony to indicate that a deed to this land was in fact executed is the testimony of the defendant himself who says that in January 1929 he called on his mother and asked her whether she was going to take certain furniture out of the house and that incidental-

ly "we swung over to this land deal and she said she had signed a deed but it was on Sunday when she signed the deed." He admits that the description of the land was not discussed but he says "Well, in our talk it would be this land, and that is we also talked about the mortgage that was on there. . . ." The mother says she did not state she signed a deed to this land. Evidently he was thinking about the land involved whereas his mother was referring to the deed to the Cottonwood land. Evan Stone says that his sister Dorothy was present at this conversation with his mother and Dorothy testifies that her mother did not say anything about having signed a deed and that the defendant did not ask her. She says she thinks she heard all of the conversation, though she did not pay much attention to it.

The testimony of the plaintiff is a vigorous denial of the execution of any deed to this land. She takes strong issue with her former husband and his office girl as to the presence of the girl at the house with any deed. She says she never signed a deed for this land to the defendant at any time, never had any conversation with her husband about giving the deed, was not acquainted with the office girl, never met her but had seen her once or twice; that she came to the house prior to the divorce to get some money and to have some hail insurance papers signed; that so far as she knew neither the office girl nor the former husband was at her place after the divorce, and she never saw them together. She says that sometime after the divorce she and her husband gave a deed to the defendant for what was known as the Cottonwood land. (The affidavits of husband and wife, used on the motions for leave to furnish additional testimony discuss this deed.)

The office girl who prepared the deed makes no attempt to testify as to its contents. She says she drew up a deed, but how she did it and what was inserted therein is not testified to by any one.

There is no proof of delivery of this alleged deed to the grantee. The father does not claim he ever delivered it to the defendant. He was not the guardian of the defendant at that time. He does not claim that his son asked him to represent him, nor that the mother asked him to have the deed drawn. At the very best it was a gratuitous act on the part of the father to get a deed to the land from the mother. He had it prepared he said, he brought it to her, she signed it and gave it back to him. Hence we have a case of an alleged deed that

was witnessed by but one witness, was never acknowledged and never recorded, which never passed into the actual possession of the grantee and after the alleged execution of the deed the parties to the deed and interested in the property still treated the property as the property of the alleged grantor. There is no testimony whatever showing that any attempt was ever made to interfere between the tenant and Ellen Stone or that she surrendered any possession of the land to any one.

The burden of proof to show the execution of the deed said to be lost is upon the defendant. The execution is strenuously denied by the plaintiff in this case. The evidence to establish the former existence of a lost deed must be strong and satisfactory. See Towle v. Sherer, 70 Minn. 312, 73 N. W. 180; Diamond v. Dennison, 102 Minn. 302, 306, 113 N. W. 696; Buttruff v. Robinson, 181 Minn. 45, 231 N. W. 414. See also Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 523, 123 N. W. 390, 392.

As said in Edwards v. Noyes, 65 N. Y. 125, 127: "Parol evidence to establish the contents of a lost deed should be clear and certain and it should show that the deed was properly executed with the formalities required by law, and show the contents of the deed, not literally but substantially."

While the findings of the trial court are entitled to appreciable weight they are not controlling. We have no hesitation in saying the proof offered is too weak to support the judgment.

Judgment for the defendant therefore is reversed and judgment ordered for the plaintiff quieting title in her with costs to the plaintiff.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.