Thomas **TOSTENSON**, Plaintiff and
Appellant,

Caroline Steger, Alma Rasmussen, and Olga
Wold, Plaintiffs,

v.

Edward **IHLAND**, Mae Anderson, August L.
Johnson, and to all persons unknown who
have or claim any interest in the real prop-
erty described in the complaint, Defend-
ants and Respondents.

No. 8321.

Supreme Court of North Dakota.

Dec. 19, 1966.

Johnson, Milloy & Eckert, Wahpeton, for appellant.

Lewis & Bullis and McMichael & Haugen, Wahpeton, for respondents.

ERICKSTAD, Judge.

Two actions were commenced in the District Court of Richland County.

The first action was brought by Alma Rasmussen and Olga Wold against Edward Ihland to set aside quitclaim deeds which had been given by the plaintiffs to the defendant, to impose an implied trust, and to secure a reconveyance of the property.

The second action was brought by Thomas Tostenson, Caroline Steger, Alma Rasmussen, and Olga Wold against Edward Ihland and others to determine title to real estate, to secure a partition thereof, and to obtain an accounting.

The cases were consolidated for trial by agreement of the parties. The district court, acting without a jury, ordered judgment in favor of the defendants. Only the plaintiff Thomas Tostenson appeals from the judgment entered on this order. Trial de novo is demanded.

The basic issue in this appeal is whether title to an undivided ⅛ interest in the real property in this action is in the plaintiff Thomas Tostenson or in the defendant Edward Ihland.

It is undisputed that when Gunne Tostenson, a resident of Richland County, died on September 27, 1939, he was the owner of the property described in Mr. Tostenson's complaint; that, because he died intestate without a surviving wife, his eight children, among whom was the plaintiff Thomas Tostenson, became entitled to his estate; that each of the said children was decreed an undivided ⅛ interest in the real estate in the final decree of the County Court of Richland County dated October 10, 1942; that Rudolph Tostenson, one of the eight children, died December 11, 1943; and that in the probate of his undivided ⅛ interest in the real estate in contest here, Rudolph's ⅛ interest was sold by the administrator of his estate to the defendant Edward Ihland for the sum of $650.

In the probate of Rudolph's estate Thomas was served the citation of the hearing of the petition for letters of administration by the sheriff of Cass County. The citation of the hearing of the petition for the sale of the real estate (the ⅛ interest of the decedent in the property formerly owned by his father, Gunne Tostenson) was not mailed to Thomas, because, as indicated by the affidavit of Mr. Forbes, the attorney for the administrator of the estate, Thomas's postoffice address was unknown.

The defendants contend that in 1946 each of the Gunne Tostenson heirs sold his or her interest in the real estate to the defendant Edward Ihland, subject to a mortgage in the defendant August L. Johnson in the sum of $3,000; that each of the said persons executed a deed conveying his or her interest in the property to Mr. Ihland; that all of said deeds have become lost or mislaid; that the plaintiff Thomas Tostenson is now estopped from denying the title of the defendant Edward Ihland or the mortgage of the defendant August L. Johnson; and that he is barred by the statute of limitations or through laches from asserting any claim to the property.

The following paragraphs of the trial court's finding are relevant to the issues in this appeal:

### V.

That the defendant Edward Ihland purchased the real estate hereinbefore described, from the plaintiffs and all of them, through their attorneys, Forbes & Forbes of Wahpeton, North Dakota, on April 3, 1945; that in so purchasing said real estate the defendant Edward Ihland deposited with the firm of Forbes & Forbes the sum of Two Thousand Two Hundred Dollars ($2,200.00) on April 3, 1945, and assumed a mortgage against said premises, held by the defendant, August L. Johnson, in the sum of Three Thousand Dollars ($3,000.00); that said mortgage was a first lien against said land at the time of the purchase.

\*    \*    \*    \*    \*    \*

### VIII.

That a judgment against Thomas Tostenson was docketed July 27, 1935, in the amount of $738.08. This was considerably in excess of the value of his one-eighth (⅛) interest and he would not have been able to receive any money unless he had satisfied said judgment.

### IX.

That the plaintiff Thomas Tostenson has never at any time made any payments on said judgment.

### X.

That Mr. Vernon Forbes was a member of the firm of Forbes & Forbes of Wahpeton, North Dakota, in April of 1945, was representing the plaintiffs, and all of them, at that time and sold the land for the plaintiffs to Mr. Edward Ihland and received full payment therefor on behalf of the plaintiffs.

### XI.

That Mr. Vernon Forbes was acting as an agent for the plaintiffs at the time the sale was consummated.

### XII.

That the defendant, Edward Ihland, has fully established an oral purchase contract between himself and the plaintiffs and has completely performed his part of the contract by paying the full purchase price and taking possession of the property.

### XIII.

That since April of 1945 when the defendant took possession of said property under the oral purchase contract, he has remained in possession of said property continually, has made improvements thereon, has paid the real estate taxes thereon, and has made substantial payments on the mortgage against said real estate.

### XIV.

That the plaintiffs, and each of them, for nineteen (19) years have permitted the defendant to pay the real estate taxes against said land, to make other necessary improvements on said land, have permitted him to pay off the mortgage that the father of the plaintiffs had executed against said land, and have permitted him to deal with said land as his own.

In this appeal Mr. Thomas Tostenson asserts eighteen specifications of error. He has grouped these specifications of error in argument on appeal into six points which we shall consider in the order in which he has stated them in his brief.

His first contention is that Attorney Vernon Forbes was not the agent of Thomas Tostenson in the sale of his interest in the land.

The judgment of the district court is based upon the premise that Mr. Forbes was acting as an agent for the plaintiff at the time the sale was consummated. Mr. Thomas Tostenson denies that any agency for the sale of his interest in the property existed at any time.

■ When agency is denied, the burden of proving it by clear and specific proof is on the party asserting it.

■ In the case of Lander v. Hartson, 77 N.D. 923, 47 N.W.2d 211, in which Mr. Lander contended that Mr. Hartson purchased certain stock for Mr. Lander as Mr. Lander's agent, and Mr. Hartson denied the agency and contended that he purchased the stock for himself and not as agent for Mr. Lander, this court said:

Section 3–0101, Revised Code of North Dakota for 1943 [now § 3–01–01, N.D. C.C.] defines agency as follows: "Agency is the relationship which results where one person, called the principal, authorizes another, called the agent, to act for him in dealing with third persons."

The rule is well established that agency will never be presumed but where its existence is denied the burden of proof is upon him who affirms its existence, and the proof of such agency must be clear and specific. [Citations omitted.]

Lander v. Hartson, supra, 47 N.W.2d at 214.

Our statute on agency has not been amended since that decision, nor has that decision been overruled. *Lander* has been quoted with approval in Vaux v. Hamilton, 103 N.W.2d 291 (N.D.1960).

What evidence do we have to sustain this burden of proof?

Mr. Forbes, testifying through a deposition taken in Alaska, stated that he represented Mr. Thomas Tostenson in the sale of the land to Mr. Ihland.

Part of his testimony reads as follows:

Q. To the best of your knowledge, were you representing all of the heirs of Rudolph Tostenson in this sale to Mr. Edward Ihland?

A. Yes, sir.

Q. Were you representing in particular Thomas Tostenson—

A. Yes.

However, it is interesting that at the time of the probate of Rudolph Tostenson's ⅛ interest, Mr. Forbes did not even know Mr. Thomas Tostenson's postoffice address.

■ Mr. Ihland asserts that all eight of the Gunne Tostenson heirs, including Thomas, employed Mr. Forbes or his law firm to prevent the sale of the land by the administrator of the Gunne Tostenson estate during the process of the probate of that estate, and that this establishes or supports his contention that Mr. Forbes was an agent for Mr. Thomas Tostenson in the sale of Mr. Thomas Tostenson's ⅛ interest in the land. Our view is that the employment of Mr. Forbes for such a purpose did not make him an agent of Mr. Thomas Tostenson for a wholly unrelated purpose, the sale of his interest in the property.

■ Agency cannot be proved by showing the declarations of the alleged agent. See: Rigler v. North Dakota Const. Co., 57 N.D. 37, 220 N.W. 441, Syllabus 1.

An examination of ledger sheets 1 and 5, offered by Mr. Ihland as Defendant's Exhibits "B" and "C," as the records of Mr. Forbes's law firm relating to the Rudolph

Tostenson estate, disclose that the firm received $2,200 from Mr. Ihland on April 4, 1945. A check dated April 3, 1945, payable to Forbes & Forbes in the sum of $2,200, signed by Edward Ihland, was also received in evidence.

Although the ledger sheets indicate that Thomas Tostenson's six brothers and sisters each received checks of $50 and $116.31, and that four of them each received checks of $16.00, the ledger sheets fail to disclose that Thomas Tostenson received any money whatsoever. There appears to be an undistributed balance in the account; however, the amount, $111.86, does not equal the amount the other heirs received.

These records cannot be said to support the contention that Mr. Forbes was an agent of and represented Mr. Thomas Tostenson in the sale of his 1/8 interest in the land acquired by him and his brothers and sisters in the Gunne Tostenson estate.

The argument that Mr. Thomas Tostenson received no money for the reason that there was a judgment docketed against him is also without merit, for there is no proof in this record that any part of the judgment, which is still of record for the full amount, was paid out of the proceeds of the $2,200 paid by Mr. Ihland.

Mr. Ihland draws our attention to the following statute:

27–13–02. Powers of attorneys.—An attorney and counselor at law may: * *

2. Bind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers, but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court; * * *.

North Dakota Century Code.

As this statute recognizes that an attorney must act "within the scope of his proper duties and powers," and as the record does not disclose that he had any more authority than was necessary to act as attorney for the administrator of the Rudolph Tostenson estate, his authority did not extend to the sale of Mr. Thomas Tostenson's 1/8 interest in the property acquired from his father Gunne Tostenson.

That the Gunne Tostenson heirs employed Mr. Forbes in 1942 to prevent the sale of the land at that time and that the law firm of Forbes & Forbes asserted in the petition on behalf of the heirs that the real estate was then worth at least $6,000 weighs against Mr. Ihland's contention that in 1946 he received the full interest in the property by paying $2,200 and assuming the mortgage of $3,000, thereby paying only $5,200.

We therefore find that Mr. Ihland has failed in his burden of proving the existence of an agency for the purpose of the sale of Mr. Thomas Tostenson's 1/8 interest.

The second contention of the appellant, Mr. Tostenson, is that Mr. Ihland has failed to prove the existence of an enforceable oral purchase agreement with the plaintiffs through an agent or otherwise.

There was no written authority given by Mr. Thomas Tostenson to Mr. Forbes to sell the real estate. The only evidence of oral authority was the testimony of Mr. Forbes himself.

Certain of our statutes appear pertinent at this point:

9–06–04. Contracts invalid unless in writing—Statute of frauds.—The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent: * * *

4. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein. Such agreement, if made by an agent of the

party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged.

47–10–01. Method of transfer.—An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by his agent thereunto authorized by writing. This does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.

North Dakota Century Code. *

The statute relating to the form of authorization of agency in effect at the time of the purported agency read as follows:

3–02–06. Form of authorization.—An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing, other than instruments covered in the title Negotiable Instruments, can be given only by an instrument in writing.

North Dakota Century Code.

In the case of Severson v. Fleck, 148 F.Supp. 760 (D.N.D.1957), an action by a real estate broker (not an attorney) for a real estate broker's commission on the sale of real estate based upon a purported oral agreement, the United States District Court said:

That a purported contract of sale, entered into with an alleged purchaser by an agent who has only verbal authority from the owner is void has been established by the decisions of the Supreme Court of North Dakota. Ballou v. Bergvendsen, 9 N.D. 285, 83 N.W. 10; Brandrup v. Britten, 11 N.D. 376, 92 N.W. 453; and Halland v. Johnson, 42 N.D. 360, 174 N.W. 874.

Under the Halland decision, supra, a contract entered into between an agent and purchaser cannot be introduced in evidence for the purpose of showing that the agent had produced a purchaser able, ready and willing to buy upon the terms stated in the void contract. The court there held that, the contract of sale being excluded, there remained no competent evidence sufficient to support plaintiff's claim, and therefore remanded the case with instructions to the trial court to enter an order for dismissal of the action.

Defendant's answer contains, in effect, a general denial. The Supreme Court of North Dakota has held that "* * * the statute of frauds pertaining to the sale of real estate is available as a defense under a general denial." Brey v. Lvedt, 74 N.D. 192, 21 N.W.2d 49, 51.

Severson v. Fleck, supra, at 766.

■ We believe that the rule applied in *Severson,* that a contract of sale of realty entered into with a purchaser by an agent who has only verbal authority from the owner is void, applies in the instant case, although the purported agent in this case is an attorney, whereas the purported agent in *Severson* was a real estate broker.

Mr. Ihland's contention is that there has been sufficient partial performance to take the agreement out of the statute of frauds, and thus that the district court had authority to order specific performance of the alleged oral agreement for the sale of the real property.

In the instant case Mr. Ihland testified that he paid Mr. Forbes $2,200, assumed a mortgage on the property for $3,000 and made payments thereon, paid the real estate taxes, and has been in possession since sometime in 1945 or 1946. No evidence was submitted as to improvements.

In support of his contention that this case does not come within the statute of

frauds because he has substantially performed the agreement, Mr. Ihland states that an oral agreement for the conveyance of an interest in real property, within the statute of frauds, may be enforced, although not in writing, if the party takes possession and makes improvements on the property. He cites § 47–10–01, N.D.C.C., and Brandhagen v. Burt, 117 N.W.2d 696 (N.D.1962).

An examination of *Brandhagen* discloses facts much different from the facts in this case.

In *Brandhagen* the alleged agreement was that the plaintiffs had orally agreed with the defendant at the time of the construction of the plaintiffs' and the defendant's buildings that the defendant could use the east wall of the plaintiffs' building as a party wall if the defendant would pay one-half of the cost of erecting the east wall of the plaintiffs' building; that inasmuch as the plaintiffs' building's east wall was to be 18 inches from the plaintiffs' east lot line, the plaintiffs would give to the defendant an easement to the 18-inch strip; that in consideration of the use of the plaintiffs' wall by the defendant as a party wall and in further consideration of the plaintiffs' giving to the defendant an easement to the 18-inch strip, the defendant would restrict the use of his building and would not carry on certain designated types of business therein for so long as the agreement between the parties continued to be in force; that the cost of a common or joint sewer or water line to the properties would be shared equally; and that the defendant would pay any repairs necessary to the plaintiffs' building's east wall for so long as it was being used as a party wall by the defendant.

It was further shown in *Brandhagen* that the plaintiffs' and the defendant's buildings were erected in due time; that in constructing the east wall of their building, the plaintiffs caused notches to be placed in the concrete for the express purpose of tying in the joists of the defendant's building; and that the defendant's building was then so constructed that it made use of the plaintiffs' building's east wall as the west wall of the defendant's building. The plaintiffs then allowed eleven years to go by before commencing their action to quiet title and for damages for the use and occupation of the 18-inch strip of their property.

The facts are obviously so dissimilar that *Brandhagen* cannot be used as a precedent in this case.

However, we believe that the facts in this case are much more comparable to the facts in Parceluk v. Knudtson, 139 N.W.2d 864 (N.D.1966).

That case was an action brought by a tenant in common to quiet title to her undivided ⅑ interest in certain real estate. *Parceluk* differs from the instant case in that the defendant in this case was not a cotenant. Nevertheless, we believe that the reasoning applied in *Parceluk* applies in this case.

In *Parceluk* the record discloses that the plaintiff acquired an undivided ⅑ interest in certain land through her father's estate. The defendants contended that subsequent to the closing of the estate the plaintiff sold her ⅑ interest in the estate, both real and personal, to her mother and her three brothers; and that, although the sale was made orally, the full purchase price agreed upon was paid to the plaintiff. The defendants further supported their claim to the property by asserting that they had remained in possession for thirteen years after the alleged sale had been made without any objection from the plaintiff, and that, relying on such oral sale, the defendants had made valuable and permanent improvements upon the real estate. The plaintiff admitted receiving $2,345 but alleged that this was for the sale of the personal property in the estate; the trial court found that she had been paid $2,529.19, and that another sister had sold her entire interest in the estate, including her interest in the real estate, for approximately the same

amount. Notwithstanding these facts, this court held that there was an insufficient showing of partial performance to take the oral agreement for the sale of the interest of the plaintiff in the real estate out of the statute of frauds.

In so finding this court applied two rules:

■ First, the mere payment of money consideration by a buyer generally is not sufficient justification for enforcing an oral contract to convey land.

■ Second, the acts relied upon for partial performance, in order to be sufficient to relieve an oral agreement from the effect of the statute of frauds, must be such as to be incomprehensible unless related to the contract to convey an interest in land.

In *Parceluk* this court said that the defendants' possession and the making of improvements upon the premises were consistent with the operation of the ranch under the ⅚ ownership of the defendants and thus were acts of performance insufficient to take the case out of the statute of frauds.

In the instant case there is no proof whatsoever of any improvements having been made nor of any payment having been received by Mr. Tostenson for any part of his interest in the real estate. The payment of the taxes, partial payment of the $3,000 mortgage, and the possession of the premises by Mr. Ihland are consistent with his operation of the land under his ⅞ ownership of the property. Therefore, we do not believe that the acts relied upon by Mr. Ihland for partial performance are such as to be incomprehensible unless related to the contract to convey.

■ In light of what has already been said and also applying the rules laid down in the syllabus of Syrup v. Pitcher, 73 N.W.2d 140 (N.D. 1955), we conclude that Mr. Ihland has failed in his burden of proving that he is entitled to have the alleged oral contract specifically performed. Those rules read as follows:

2. The burden of proof rests on one who seeks to have a contract specifically performed to establish the terms of a contract upon which he relies which are essential to a decree of specific performance.

3. Where the vendee of an oral contract for the sale of real estate seeks to avoid the impact of the statute of frauds by showing partial performance, he must by clear and definite proof establish a contract that possesses all the elements and features necessary to the specific enforcement of any agreement, except the written memorandum required by the statute.

4. Improvements made on land, in order to constitute part performance of an oral contract for its sale, must be valuable, substantial and permanent.

Syrup v. Pitcher, supra, at 142.

The third general area we must consider in this case arises from Mr. Ihland's contention that Mr. Tostenson is estopped from asserting his title.

In support of his contention that Mr. Tostenson is estopped from asserting his title to his ⅛ interest in the land, Mr. Ihland refers us to the following from Corpus Juris Secundum:

One who with knowledge of the facts and without objection suffers another to make improvements or expenditures on, or in connection with, his property, or in derogation of his rights under a claim of title or right, will be estopped to deny such title or right to the prejudice of that other who has acted in reliance on, and been misled by, his conduct; and a fortiori the rule is applicable where the party against whom the estoppel is claimed not only makes no objection but assists in making the improvements. The estoppel may arise, although the period of acquiescence is very short.

\*   \*   \*   \*   \*   \*

It is essential that at the time the improvements are made the party against whom the estoppel is claimed should have been aware of his title to, or interest in, the property improved, or if he was ignorant of his rights that such ignorance was not the result of gross negligence, or that the title was not equally open to the notice of both parties. It is essential also that the party claiming the estoppel should have acted in ignorance of the other's title or interest and have been influenced by the conduct of the party against whom the estoppel is claimed. No estoppel can be asserted against one who permits another to make improvements without giving notice of his title where the means of knowledge is equally available to both.

*Mere silence or failure to object does not operate as an estoppel in favor of the one making the improvements, where he has knowledge of a convenient and available means of acquiring knowledge of the true state of the title, or where the means of knowledge are equally available to both parties.* * * * [Emphasis added by the Court.]

An estoppel will arise only where the party making the improvements or expenditures believes in good faith that he has a right to do so. No estoppel arises where the party against whom it is claimed had no knowledge of the expenditures or improvements, or that they were in contemplation. * * *

31 C.J.S. Estoppel § 94, at 505–509 (1964).

The paragraph which we have italicized is more in support of Mr. Tostenson's position than of Mr. Ihland's position. Having sought to purchase the property, it was Mr. Ihland's privilege, if not his responsibility, to have obtained an abstract of title to the property and to have secured an opinion from an attorney disclosing the state of the title both prior to the sale and following its consummation continued to the date of the purchase. The records in the Richland County Register of Deeds office were a convenient and available means of acquiring knowledge of the true state of the title and were actually more available to Mr. Ihland, who lived in that county, than they were to Mr. Tostenson, who lived in Cass County. It must be assumed that Mr. Ihland had knowledge that the title records were available in the Register of Deeds office.

■ In the syllabus of a decision rendered by this court in 1966, a case in which a plaintiff sought to quiet title to certain real estate, alleging that the defendant was estopped from asserting her title to the property because of her conduct, we said:

6. For a person who has made admissions by his declarations or conduct affecting title to property to be estopped from asserting his right to the title, it must appear, first, that he was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was, not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that the other party relied directly upon such admission and will be injured by allowing its truth to be disproved.

Sittner v. Mistelski, 140 N.W.2d 360, 362 (N.D.1966).

In the instant case the conduct said to have affected the title to the property is Mr. Tostenson's failure to complain to Mr. Ihland during Mr. Ihland's nineteen years of possession of the property. However, there is no evidence clearly indicating that Mr. Tostenson was apprised of the true state of his own title. He had a very limited education, and it appears that he had entrusted the management of the land to his sister. There is nothing in the record to show that Mr. Tostenson ever knew that Mr. Ihland took possession and claimed the farm as his own. During the years that Mr. Ihland was in possession of the land

Mr. Tostenson lived in Fargo. The records show that he was not sent the notice of the hearing for the petition for the sale of his brother's ⅛ interest because, as explained in Mr. Forbes's affidavit, Mr. Forbes did not know Mr. Tostenson's postoffice address. He at no time received any money to place him on notice of Mr. Ihland's claim of ownership. His testimony was that it was not until 1962, when he received a letter from the law firm of Forbes, Warner & McMichael asking him to execute a quit-claim deed to the property that he realized that Mr. Ihland was claiming title to the property. He further testified that when he received this letter, he employed Mr. Hendrickson, an attorney at Fargo, to check the records, and that, after checking the records, he commenced this action.

Analyzing the facts of this case in light of the rule laid down in *Sittner,* it can hardly be said that Mr. Tostenson was apprised of the true state of his own title; that his conduct, consisting of a failure to object to Mr. Ihland's nineteen years of possession and his payment of taxes and partial payment of the mortgage, was with the express intention to deceive, or that under the circumstances the conduct was with such careless and culpable negligence as to amount to constructive fraud; that Mr. Ihland was without the means of acquiring the knowledge of the true state of the title; and that Mr. Ihland relied directly upon Mr. Tostenson's failure to object and will be injured thereby.

■ As Mr. Ihland is the owner of an undivided ⅞ interest in the land, there is no proof that he has been injured at all by Mr. Tostenson's failure to act or object or that he has been injured by having had the benefit of the possession of the land, the payment of the taxes, or the payment of $1,000 of the $3,000 mortgage. Obviously, the possession was a benefit, not a detriment. The payment of the taxes and the partial payment of the mortgage can be taken into consideration when the action for an accounting is considered, that action

having been postponed by stipulation of the parties until a final determination of the matter of title. Therefore, we find that Mr. Ihland has failed in his burden of proving that the doctrine of equitable estoppel applies in this case.

The lower court made no finding as to the issue of a lost deed, but as Mr. Ihland, in his amended answer and counterclaim, alleged that Mr. Tostenson executed a quitclaim deed conveying his undivided ⅛ interest in the land to Mr. Ihland and that this deed was delivered to Mr. Ihland, and as evidence was offered in respect thereto, the issue of a lost deed will be discussed herein.

■ In a 1902 decision of this court involving an action brought by a plaintiff to quiet title to certain real estate, of which the plaintiff was the original patentee, and the defendant bank denied the plaintiff's claim to title and asserted that it was the owner of the land through a lost deed, this court said:

> * * * The rule is well settled that one who relies upon a lost deed to sustain his title to real estate must establish its original existence, its loss, and the material parts thereof, by clear and convincing evidence. [Citations omitted.] * * *

Garland v. Foster County State Bank, 11 N.D. 374, 92 N.W. 452.

In a decision rendered by this court in 1931 in which a defendant sought to assert title to certain real estate through a lost deed, we said:

> The burden of proof to show the execution of the deed said to be lost is upon the defendant. The execution is strenuously denied by the plaintiff in this case. The evidence to establish the former existence of a lost deed must be strong and satisfactory. [Citations omitted.]

As said in Edwards v. Noyes, 65 N.Y. 125, 127: "Parol evidence to estab-

lish the contents of a lost deed should be clear and certain. It should show that the deed was properly executed with the formalities required by law, and should show all the contents of the deed, not literally, but substantially."

Stone v. Stone, 61 N.D. 563, 238 N.W. 881, 883.

Corpus Juris Secundum has stated it this way:

In accordance with the rules as to the burden of proof in civil cases generally, the burden of proof is on the person seeking to establish a lost instrument to prove its former existence, execution, delivery, loss, and the making of a proper search therefor. * * *

*  *  *  *  *  *
' * * * [I]t is generally held that in actions to establish a lost instrument the evidence of the former existence, execution, delivery, loss, and contents of the lost instrument should be clear and convincing * * *.

54 C.J.S. Lost Instruments § 13, at 813–814 (1948).

In the instant case how has the person seeking to establish the lost instrument sustained that burden of proof?

Mr. Ihland testified that on April 3, 1945, he presented his check in the sum of $2,200 to Mr. Vernon Forbes as the cash payment on the land, and that at that time Mr. Forbes showed him the deeds from the Tostenson heirs. He further testified as follows:

Q. Now, Mr. Ihland, did you yourself personally ever see any of these people sign the deed?

A. One.

Q. Who was that?

A. Thomas Tostenson.

Q. Under what circumstances did you see him sign his deed?

A. Forbes had me take the deed down to him.

Q. You had contacted Thomas prior to this time, had you not?

A. Yes.

Q. At that time did he indicate to you that he was willing to sell?

A. He was undecided, I think.

Q. And at a later date did Mr. Forbes contact you concerning Thomas?

A. Well, I suppose—I don't—I can't —but he did—somebody.

Q. Could you talk a little louder, please?

A. Yes, he had somebody, because he sent me down with the deed.

Q. You went to his office, got a deed, and took it down to Thomas?

A. (Nods head.)

Q. And Thomas signed it in your presence?

A. Yes.

Q. And was it notarized in your presence?

A. Yes.

Q. Who notarized it?

A. A. W. Lee.

Q. And where was Mr. Lee?

A. I think he stayed in an apartment.

Q. Was this at an apartment building?

A. Yes, Edmore's Apartments.

Q. In what city?

A. Fargo.

Q. And did Mr. Tostenson live there at that time?

A. He was janitor there.

Q. I see. And he signed this deed, and then what did he do with this deed?

A. I took the deed.

Q. And what did you do with it?

A. Took it up to Forbes.

Q. And did he at that time do you know have everyone's signature on a deed?

A. Yes.

Q. Was there more signatures on this deed than Mr. Tostenson's, the one that you took down to Fargo?

A. That I can't remember.

Q. But you definitely did have the deed describing these premises, and Mr. Tostenson definitely signed it in your presence?

A. Yes.

Q. And gave you the deed?

A. Uh-huh.

Q. Could you talk a little louder?

A. Yes.

On the other hand, the attorney, Mr. Vernon Forbes, through a deposition taken in Alaska, testified as follows:

Q. Now, during the time that you were representing these heirs, Thomas Tostenson was one that sometimes moved?

A. Yes, he was hard to locate.

Q. Well, do you recall what residences he did have that you used to locate him?

A. I never located him myself, but as I recall, his sisters took the deed to Fargo to have him execute it. He was somewhat reluctant and they got him to execute the deed before a Notary Public and then brought the deed back to me and that was the last signature, as I recall.

Q. And when would that have been, approximately?

A. I think it would be in January of 1946.

Q. Prior to that time was it your usual custom to refer to the sisters to reach Thomas or did you have direct contact with him?

A. I don't think I ever had a mailing address for Thomas.

Mr. Thomas Tostenson denied that he ever sold or deeded any part of the land to anyone. He further denied that he had any dealings with Mr. Ihland or conversations with him about the land or about anything.

It is interesting that, although Mr. Ihland testified that a Mr. A. W. Lee notarized the deed, Mr. Lee was not called to corroborate the testimony regarding the execution of the deed, nor was any attempt at explanation made for the failure to call him.

■ In light of the descrepancies between the testimony of the attorney and that of Mr. Ihland concerning the form of the deed, the parties who secured its execution, and the witnesses to its signing, we find that the existence of the deed has not been proved by evidence that is clear and convincing and accordingly hold that Mr. Ihland has failed in his burden of proving title through a lost deed.

The trial court made no determination of Mr. Ihland's contention that Mr. Tostenson was barred from asserting his title by the statute of limitations, and we need not discuss this contention in detail, as it is obvious that Mr. Ihland has failed to prove that he adversely possessed the real estate for ten years under color of title, as is required under § 47–06–03, N.D.C.C., or that he adversely possessed the land under claim of title for twenty years under §§ 28–01–04, 28–01–05, and 28–01–07.

■ This conclusion appears clearly from the fact that Mr. Ihland claims to have taken possession of the property in April 1946, whereas this action to quiet title was initiated by Mr. Tostenson in September 1964, leaving less than twenty years of adverse possession. There being no written document constituting color of title, Mr. Ihland has failed to establish his claim under the ten-year statute of limitations.

In view of the determinations made herein on the various issues presented, we conclude that the judgment, as it affects Mr. Thomas Tostenson, must be reversed, and accordingly we remand the case to the trial court with instructions to order judgment quieting title in Mr. Thomas Tostenson to an undivided ⅛ interest in the real estate described in his complaint, subject, as is Mr. Ihland's ⅞ interest, to the mortgage of the defendant August L. Johnson.

Having so concluded, it is not necessary for us to discuss the propriety of the costs which were assessed by the trial court against Mr. Tostenson and the other plaintiffs in the sum of $61.40 for mileage to Menominee, Wisconsin, to take the deposition of the plaintiff Olga Wold. As Mr. Thomas Tostenson is the prevailing party on this appeal, those costs cannot be assessed against him.

TEIGEN, C. J., and MURRAY, STRUTZ and KNUDSON, JJ., concur.