Neil J. NELSON, Maxine Nelson, Loyd Stevens, Phyllis E. Swenson, Shirley E. Vohs, Karen C. Huddelson, and Garvin L. Stevens, Plaintiffs and Appellants,

v.

Mildred CHRISTIANSON, Jean Ullrich, Mary Jane Meyer, Donald Stevens, Robert Stevens, Alan Stevens, Arlene Gustafson, Joyce Evanson, Lois Monson, and all other persons unknown and claiming any estate or interest in or lien or encumbrance on the property described in the Complaint, Defendants and Appellees.

Civ. No. 10492.

Supreme Court of North Dakota.

Jan. 17, 1984.

McIntee & Whisenand, Williston, for plaintiffs and appellants; argued by Frederick E. Whisenand, Jr., Williston.

William Strate, Watford City, for defendants and appellees Mildred Christianson, Jean Ullrich, Mary Jane Meyer, Donald Stevens, Robert Stevens and Alan Stevens; no oral argument.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for defendants and appellees Arlene Gustafson, Joyce Evanson and Lois Monson; argued by Dwight C. Eiken, Williston.

PEDERSON, Justice.

This is an appeal from a judgment in a quiet title action (Ch. 32–17, NDCC) involving disputed separate ownership of surface and minerals in a tract of land in McKenzie County. The trial court, upon entirely documentary evidence, held that neither title by prescription nor by a lost deed had been established. We affirm in part and reverse in part, and remand for amendment of the judgment.

The facts were submitted by a stipulation which incorporated the abstract of title, certain affidavits, and answers to interrogatories. The findings of fact are not claimed to be clearly erroneous; accordingly, we address only questions of law. (See Rule 52(a), NDRCivP.)

In 1913 Ebenezer Stevens obtained a patent to the land, which remained in the continuous possession of the Stevens family until it was surrendered (in 1970) to Neil J. and Maxine Nelson by Loyd Stevens, pursuant to a contract for deed. As required by this contract, Loyd executed a warranty deed and delivered it to the Nelsons in 1980. It is undisputed that the Nelsons have been in exclusive and continuous possession of the surface and have paid all real estate taxes for more than 10 years.

In 1925 real estate taxes in the amount of $22.43 went unpaid and, consequently, title was acquired by McKenzie County. This title was conveyed to Margaret Stevens in 1930. Loyd claims that he furnished the consideration that was paid to McKenzie County by Margaret Stevens, his mother.

Loyd also claims that his mother, sometime between 1930 and 1932, conveyed the title to him by a deed which was never recorded and which he claims to have been lost. It is possible to interpret some of

Loyd's conduct over the years to be inconsistent with the claim that he was sole owner of the land by virtue of the lost deed. In 1940, for example, he sought a quit claim deed from his father, George C. Stevens, his sister, Gertrude Stevens Cushing, and his brothers, Russell Stevens and George E. Stevens, and from his deceased brother Frank Stevens' widow, Agnes Stevens. This action by Loyd could mean that he was claiming to be sole owner and merely desired to clear a cloud from his title; on the other hand, it also could mean that he desired to acquire those interests in the land which he did not own. The trial court concluded that Loyd's failure to include any recital concerning the lost deed was the determinative factor.

A significant part of Loyd's argument is that he has established the lost deed as a matter of law because, as he points out, there is no statement by affidavit or otherwise contradicting his affirmative statement. This court last considered the issues relating to proving a lost deed in 1966. This was before the repeal of § 28–27–32, NDCC, which authorized trials de novo on appeals to this court. See *Tostenson v. Ihland,* 147 N.W.2d 104 (N.D.1966). That case, as well as the earlier holdings on the question, required that the evidence of a lost deed be "clear and convincing," *Garland v. Foster County State Bank,* 11 N.D. 374, 92 N.W. 452 (1902); "strong and satisfactory," *Stone v. Stone,* 61 N.D. 563, 238 N.W. 881 (1931); or "clear and satisfactory," *McManus v. Commow,* 10 N.D. 340, 87 N.W. 8 (1901). See also 52 Am.Jur.2d, Lost and Destroyed Instruments, § 61, and *Cranston v. Winters,* 238 N.W.2d 647 (N.D.1976).

■ Although we have often held that questions of fact become questions of law when the evidence is such that only one conclusion can be reached therefrom, e.g., *Armstrong v. Miller,* 189 N.W.2d 688 (N.D.1971), this court has also held that "the trier of fact is not required to accept the uncontradicted testimony of an interested party." *Belinskey v. Hansen,* 261 N.W.2d 390, 395 (N.D.1977). That being

so, an issue of fact does not become an issue of law, under all circumstances, merely because the testimony which supports it is uncontradicted. Remembering that we have often remarked that appellate courts should not, in the ordinary case, substitute their judgment for that of the trial courts in the absence of trial de novo, e.g., *State v. Livingston,* 270 N.W.2d 556, 557 (N.D. 1978), whether we treat the question of the lost deed as one of fact or as one of law, we agree that the trial court correctly concluded that Loyd did not establish title by a lost deed.

Alternately, Loyd contends that he established title by adverse possession. The Nelsons, on a different basis, also argue that they have established title to the surface by adverse possession. We will consider their claim separately. It is not disputed that Loyd had been in possession of the surface for at least 40 years before surrendering possession to the Nelsons in 1970. The nature of Loyd's possession determines whether or not it ripened into title under North Dakota statutes. See §§ 47–06–03, 28–01–04, 28–01–05, 28–01–06, and 28–01–07, NDCC.

■ Section 47–06–03 requires that the possession be "actual open adverse and undisputed." Section 28–01–07 raises a presumption that possession is not adverse. There is a further presumption, long established by case law, that one cotenant or tenant in common in possession holds such possession "in subordination to the rights of ... cotenant[s]." See *Ildvedsen v. First State Bank,* 24 N.D. 227, 234, 139 N.W. 105, 108 (1912). That case further held that "the possession of real estate by one of several tenants in common will not be construed as adverse to his cotenants," and "to render his occupancy adverse to those who have an undivided interest in the premises, there must be positive and overt acts connected with his exercise of ownership such as will manifest an unmistakable intention on his part to exclude his cotenants from the enjoyment of the property." 139 N.W. at 108. See also *Hagen v. Hagen,* 137 N.W.2d 234 (N.D.1965); *Smith v.*

*Nyreen,* 81 N.W.2d 769 (N.D.1957); *Stoll v. Gottbreht,* 45 N.D. 158, 176 N.W. 932 (1920).

Was Loyd a mere tenant in common with his father, his sister, and his brothers? Having previously concluded that he did not establish title by virtue of a lost deed from his mother, it is apparent that whatever title he had arose out of succession upon the death in 1932 of Margaret Stevens.

> "The law as to inheritance is applied as it existed at the time of death." Syllabus 4, *C.L.W. v. M.J.,* 254 N.W.2d 446, 447 (N.D.1977).

In 1932 the applicable law is found in §§ 5741, 5742 and 5743 of the Compiled Laws of North Dakota 1913, and as amended by the 1925 Supplement thereto. There is no contention that these statutes have not been properly applied. "Where an owner of real property intestate, on his death is survived by more than one heir the descent of the property by operation of law to the several heirs creates a tenancy in common." Syllabus 3, *Stevahn v. Meidinger,* 79 N.D. 323, 57 N.W.2d 1, 4 (1952).

Loyd contends that even though his action in holding possession exclusively, paying taxes, and retaining all rents and profits may not qualify as hostile ouster of cotenants, (1) his overt acts of leasing for oil and gas in 1951 and repeatedly thereafter; (2) his recording of an affidavit in 1970 stating that he is the "sole and only owner" of the land; and (3) the recording of the contract for deed to the Nelsons in 1970, all constitute ouster of cotenants.

■ Citing *Bilby v. Wire,* 77 N.W.2d 882 (N.D.1956), this court has held that there must be actual possession of the mineral estate before there can be adverse possession of it; and that the execution of oil and gas leases, while evidence of possession, does not constitute actual possession sufficient for adverse possession of severed mineral interests. See *Sickler v. Pope,* 326 N.W.2d 86, 93 (N.D.1982); Williams and Meyers, Oil and Gas Law, § 224.4, n. 4 (1981). If the leasing does not qualify as the actual possession required for adverse

possession of the minerals, it can hardly qualify as the hostile ouster required for adverse possession of the surface.

The other two overt acts relied upon by Loyd—recording the affidavit and the contract for deed in 1970—both gave constructive notice "to all purchasers and encumbrancers." See § 47–19–45, NDCC. The statute does not imply that constructive notice is chargeable to cotenants. This court has, on two occasions, made comments particularly pertinent to the type of notice required to establish a hostile ouster for purposes of adverse possession.

In *Ellison v. Strandback,* 62 N.W.2d 95, 100 (N.D.1954), we held:

> "Possession, which is permissive in its inception can become adverse only where there is a disclaimer of the true owner's title, or there are acts of such an unequivocal nature on the part of the user, that notice of the hostile character of the possession is *brought home* to the record owner." [Emphasis added.]

Subsequently, in a footnote in *Brooks v. Bogart,* 231 N.W.2d 746, 751 (N.D.1975), we pointed out that "direct notice is not necessary if there is a course of conduct in direct hostility"; however the acts of hostility must be "unmistakably clear." *Simons v. Tancre,* 321 N.W.2d 495, 499 (N.D. 1982); *Heggen v. Marentette,* 144 N.W.2d 218, 226 (N.D.1966).

The matter is the subject of an exhaustive, 306-page annotation in 82 ALR2d 1, Adverse Possession—Cotenants. See particularly §§ 50 through 65, pages 217–284. Some courts have described the relationship between one cotenant in possession as "fiduciary" to the other cotenants. E.g., *Campbell v. Dedeaux,* 386 So.2d 713, 714 (Miss.1980); *City and County of Honolulu v. Bennett,* 57 Hawaii 195, 552 P.2d 1380, 1390 (1976); *Hendrix v. Hendrix,* 256 Ark. 289, 293, 506 S.W.2d 848, 851 (1974); *Aaron v. Puccinelli,* 121 Cal.App.2d 675, 677, 264 P.2d 152, 154 (1953).

> "... it has been held that a tenant in common in possession cannot occupy the opposing positions of recognizing and

purchasing the interests of some of his cotenants and at the same time claiming that he has ousted other cotenants." 86 C.J.S. Tenancy in Common § 37.

■ It is apparent in this case that not only did Loyd acquire the interests of some cotenants by deed, he further relied on only constructive notice of his ouster of the other cotenants. The trial court correctly concluded that he had not established title by adverse possession.

Because the Nelsons were not cotenants with any of the other parties to this dispute, the rules relating to ouster for purposes of adverse possession which apply to Loyd do not apply to them. In *Morrison v. Hawksett*, 64 N.W.2d 786 (N.D.1954) at syllabus 2, this court held:

"Where a cotenant executes a deed which purports to convey the whole title, to the land described in the deed, to a stranger, and the grantee records his deed and enters into possession of the entire tract, the possession of the grantee is adverse to the other cotenants and is under color of title."

See also *Chapin v. Letcher*, 93 N.W.2d 415 (N.D.1958), syllabus 5; 3 Am.Jur.2d Adverse Possession § 190.

■ Because the Nelsons held exclusive, hostile possession of the surface from 1970 and for more than 10 years thereafter, and paid all taxes and assessments legally levied thereon, they have established title to all of the surface by adverse possession. See §§ 47–06–02 and 47–06–03, NDCC. The trial court erred when it concluded that the Nelsons were the owners of only an undivided 35/45ths interest in the surface.

■ As we have hereinbefore pointed out, the cases of *Bilby v. Wire, supra,* and *Sickler v. Pope, supra,* clearly have held that the execution of oil and gas leases does not evidence possession of minerals for purposes of adverse possession, and there being no evidence in this case of actual possession of the minerals, there has been no ouster of the cotenants' interests in minerals. The trial court correctly held (1) that the Nelsons have an undivided 1/8th interest in the minerals pursuant to the deed from Loyd Stevens; (2) that Loyd Stevens, Phylis E. Swenson, Shirley E. Vohs, Karen C. Huddelson and Garvin L. Stevens have jointly an undivided 235/360th interest in the minerals; (3) that Arlene Gustafson, Joyce Evanson and Lois Monson each have an undivided 4/135th interest in the minerals; and (4) that Mildred Christianson, Jean Ullrich, Mary Jane Meyer, Donald Stevens, Robert Stevens and Alan Stevens each have an undivided 1/45th interest in the minerals.

The judgment is affirmed in part, reversed in part, and remanded for amendment of the judgment in accordance herewith. No costs are awarded on the appeal.

ERICKSTAD, C.J., VANDE WALLE and SAND, JJ., and DOUGLAS B. HEEN, District Judge, concur.

HEEN, District Judge, sitting in place of GIERKE, J., disqualified.